IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 04-1328-GMS |
| | ) |
| DAVID HOLMAN, Deputy Warden | ) |
| LAWRENCE McGUIGAN, and | ) |
| CLYDE SAGERS | ) |
| | ) |
| Defendants. | ) |

**STATE DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS/SUMMARY JUDGMENT PURSUANT TO RULE 12 (b)(6) OF THE FEDERAL <u>RULES OF CIVIL PROCEDURE</u>**

**I.   Introduction**

At their most specific, Plaintiff's allegations in this case involve his claim that Defendant's violated the Eighth Amendment by acting with deliberate indifference when they did not change his cell, and thus failing to protect him from his cellmate.

Defendant refers to matters outside the pleadings, therefore the Court may treat its motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Camp v. Brennan*, 219 F.3d 279, 280 (3rd. Cir. 2000) (consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment). Defendants David Holman, Lawrence McGuigan and Clyde Sagers contend that they are entitled to judgment as a matter of law because there are no genuine issues of material fact in dispute. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there

is a genuine issue for trial.'"). Defendants assert that Plaintiff has not made, and cannot make a sufficient showing of the essential elements of his case for which he carries the burden of proof. Therefore, dismissal is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addition, Defendants state, unless there is sufficient evidence to enable a jury reasonably to find for the nonmoving party on the factual issue, summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.    Statement of Facts

Plaintiff James Hall entered the Delaware Correctional Center (hereinafter "DCC") on January 20, 2004. On January 22, 2004, Plaintiff was assigned to share a cell with Anthony Coffield. At the time he was assigned to share the cell with Coffield, he had a fracture of his fifth metacarpal or "pinkie finger" on his right hand, not the broken hand he claims in his Complaint. (See X-Ray report and consultation note attached as Exhibit "A").

Plaintiff's concerns about his cellmate first surface in a letter to David Holman in which he complains that "<u>my cellie and I are constantly bickering & arguing</u>"[sic]. (*See* letter stamped February 27, 2004 and attached as Exhibit "B"). The letter simply refers to bickering and arguing and requests a transfer. Nowhere in the letter does Plaintiff state that physical violence has erupted between the two men. Nor does the letter mention threats of violence. In addition, Plaintiff does not articulate in what way Coffield presents a threat to him. David Holman responded to Plaintiff, letting him know that his request was forwarded to Deputy Warden Lawrence McGuigan. (*See* memorandum from David Holman, dated March 9, 2004, and attached as Exhibit "C").

In his Statement of Claim in his Complaint, Plaintiff states that he lost a tooth on March 9, 2004, after being attacked. However, Plaintiff's rather extensive dental records do not indicate

that he requested attention for the tooth or that he was seen around that time for trauma to his mouth or teeth. (*See* dental records attached as Exhibit "D"). In a letter dated March 30, 2004, Plaintiff asked Lawrence McGuigan for a transfer, stating that he is "having problems and confrontation [sic] from my cellmate Anthony Coffield." (*See* letter to Deputy Warden McGuigan attached as Exhibit "E"). Again, Plaintiff vaguely alludes to "problems" and "confrontation." And again, Plaintiff does not mention any physical altercation. In addition, no mention is made of an attack and the loss of a tooth on March 9, 2004, as Plaintiff claims in his Complaint. David Homan responded to Plaintiff's request by letter in which he denies Plaintiff's request. (*See* David Holman's memorandum dated April 13, 2004 attached as Exhibit "F").

On Sunday, June 6, 2004, a fight broke out on the tier. Three inmates, including Anthony Coffield were seen around Plaintiff. A correction officer saw one of the inmates, Keith Hurst, punch Plaintiff. (*See* incident reports of Stephen McClain and Stephen Boone attached as Exhibit "G"). The inmates were separated and inmates Coffield, Hurst and Marton were sent to the Secured Housing Unit (hereinafter "SHU"). At a later disciplinary hearing Coffield was found not guilty of assault because no one witnessed him hitting Plaintiff. (*See* disciplinary hearing decision attached as Exhibit "H"). During the melee on the tier, Plaintiff did lose a tooth. Plaintiff was examined by a dentist the following day. (See dental notes dated June 7, 2004, attached as Exhibit "I").

In his statement to Lt. Stephen Boone after the fight, Coffield stated that the on June 5th there was a fight between other inmates on the tier. In his statement Coffield said that a friend of Plaintiff's, an inmate named Gregory Summers, attacked another inmate, and implied that Summers tried to enlist the help of Plaintiff in further attacks. (*See* Statement of Anthony Coffield attached as Exhibit "J").

In his two letters Plaintiff complains about sharing a cell with Coffield. The fight on June 6, 2004, occurred outside the cell, on the tier, and involved several inmates. It was inmate Hurst who was actually seen hitting Plaintiff.

In his Complaint, Plaintiff does not indicate that he ever submitted any grievances regarding threats, or physical altercations between him and Coffield. There were no records found of any grievances filed by Plaintiff regarding threats or altercations with Coffield.

If an inmate assaults another inmate, and the assault is reported or witnessed, a disciplinary report will be written regarding the aggressor. A review of the disciplinary record of Anthony Coffield shows that with one exception, he has committed only minor infractions of the housing rules since 2001, and there are no records of violent activity toward other inmates. In May, 2003, Coffield received a disciplinary write-up for rubbing his forearm against the chest of a female correction officer as he was walking by her. *(See* disciplinary record log and disciplinary reports of Anthony Coffield attached as Exhibit "K").

After the fight on June 6, 2004, a "no contact in facility" warning was placed in Plaintiff's housing information computer file. (*See* housing information "print screen" attached as Exhibit "L"). Before June 6, 2004, there was no evidence in the form of disciplinary reports to indicate that Anthony Coffield was prone to getting into physical altercations with his cellmates.

## ARUGMENT

I.  **PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT FOR WHICH RELEIF CAN BE GRANTED.**

Plaintiff does not demonstrate that he was deprived of a constitutional right by the prison officials. In order to prevail in his Section 1983 claim, Plaintiff must demonstrate that the prison

officials, acting under the color of state law, deprived him of a constitutional right. *See* 42 U.S.C. § 1983. In 2004, when the incident occurred, the defendants were prison officials at the DCC, a state facility. Defendants contend that they did not violate Plaintiff's constitutional rights under the Eight Amendment by subjecting him to cruel and unusual punishment by failing to protect him.

It is presumed that if Plaintiff has any evidence of Defendant's failure to protect him that he would have included it with his Complaint. However, what Plaintiff presents are two letters written to prison officials that mention "arguments," "bickering," "problems" and "confrontations." Under no circumstances do these letters make a sustainable claim of failure to protect under the Eighth Amendment. Plaintiff's Complaint is riddled with bald accusations of deliberate indifference by the prison officials simply fails to state a claim for which relief can be granted. While prison officials do have a duty to protect inmates from violence by other inmates, nowhere does the law demand that the officials guarantee an inmate's safety, as Plaintiff claims in his Complaint in paragraph nine. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Further, Plaintiff's claim that officials were deliberately indifferent because they "failed to predict compatibility of inmates" is patently ridiculous. (*See* Complaint ¶ 21).

    A.    **PLAINTIFF FAILS TO SHOW THAT BEING HOUSED IN A CELL WITH ANTHONY COFFIELD RISES TO THE LEVEL OF CRUEL AND UNUSUAL PUNISHMENT.**

Plaintiff's fight with another inmate does not equate with constitutional liability for Defendants. The Eighth Amendment imposes a duty on prison officials to take reasonable measures to protect inmates from violence by other inmates. *Farmer*, 511 U.S. at 833. The Supreme Court in Farmer went on to hold that:

> It is not, however, every injury suffered by one prisoner at the

5

>    hands of another that translates into constitutional liability for
>    prison officials responsible for the victim's safety.

*Id.* at 834.

Plaintiff fails to meet both the subjective and objective standard required to establish a viable Eighth Amendment claim. To prevail in an Eighth Amendment claim alleging a failure to protect, the plaintiff must demonstrate that:

>    [T]he alleged deprivation must be objectively "sufficiently serious." Thus, where the alleged violations can be described as a failure to prevent harm, the inmate must show that his or her conditions of incarceration posed a "substantial risk of serious harm." Second, the prison official's state of mind must be one of "deliberate indifference" to the inmate's health or safety.

*Carrigan v. Delaware*, 957 F. Supp. 1376, 1381 (D. Del. 1997)(citing *Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994). In his Complaint Plaintiff does not show that being placed in a cell with Anthony Coffield was a sufficiently serious deprivation of his constitutional rights, and that the placement posed a substantial risk of serious harm to him.

Plaintiff does not state any circumstances that meet the objective threshold of a "substantial risk of serious harm." Plaintiff does not claim that he and Coffield ever had any physical altercations prior to June 6, 2004. The disciplinary record of Anthony Coffield shows no indication of physical violence toward Plaintiff or anyone else. (Exhibit "K"). After the incident on June 6th, Coffield, Hurst and Marton were sent to the SHU, cutting off contact between Plaintiff and the three inmates. (Exhibit "G"). Thus, the record contradicts Plaintiff's claim that prison officials placed him at substantial risk of serious harm. When there was actual evidence of a physical altercation between Plaintiff and other inmates, officials acted to provided additional protection for Plaintiff, by removing the other inmates from the housing unit. That they did not act on Plaintiff's vague, ambiguous complaints in his two letters is not a

6

violation of the Eighth Amendment.

Next, Plaintiff cannot prove that the harm he suffered on June 6, 2004, was serious. While the fight resulted in a lost tooth, the injury cannot be classified as serious harm or a serious risk to his life or well-being. When Plaintiff was seen and examined by a dentist the next day, he did not want the remainder of the tooth removed at that time. The fact that Plaintiff essentially refused treatment for the injury indicates that while uncomfortable and unpleasant, his injury does not meet the requirement of serious harm.

### B. PLAINTIFF'S COMPLAINT FAILS TO DEMONSTRATE THAT OFFICIALS ACTED WITH DELIBERATE INDIFFERENCE AND FAILED TO PROTECT PALINTIFF.

In addition to his failure to meet the objective threshold component of "substantial risk of serious harm", Plaintiff fails to demonstrate the subjective component of deliberate indifference on the part of the prison officials.

In *Farmer*, the Supreme Court enunciated the elements required to show deliberate indifference by the prison officials. Plaintiff must show that the prison official "knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Plaintiff must have "*actual knowledge of a substantial risk of serious harm.*" *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). That a prison official has actual knowledge of a substantial risk can be show through "inference from circumstantial evidence…and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Plaintiff does not demonstrate that the prison officials had actual knowledge of a substantial risk of serious harm in this case. Nor could a factfinder conclude that the prison officials knew of the substantial risk because in this case, the risk was not obvious.

Plaintiff fails to show either actual knowledge or a substantial risk of serious harm .

There is nothing in Plaintiff's letters that indicate that Defendants had any reason to believe that Anthony Coffield presented a significant risk to Plaintiff.  In spite of the letters that Plaintiff believes sound an alarm, there is no evidence in those letters that Plaintiff provided Defendants with the notice required to hold them accountable for failure to protect him.  In both his letters to Defendants, Plaintiff simply makes vague, global complaints of "arguing," "bickering," "problems" and "confrontations."  (Exhibits "B" and "E").  Plaintiff does not provide any specific information to the prison officials that would place them on notice that he faced a substantial risk of serious harm at the hands of Anthony Coffield.  He does not state in either letter to the officials that there were any specific threats of violence or actual physical altercations.  Nor does he mention in his communication to the officials any history of violence or threats.  Based on the letters he sent to the prison officials which he has included in his Complaint, there was no reason for the prison officials to be placed on alert about a substantial risk of injury to Plaintiff.   Therefore, prison officials cannot be imputed with the actual knowledge required to sustain a claim of deliberate indifference.

      Plaintiff's claim in his Complaint that prison officials "should have known" of a risk to Plaintiff is without merit. (*See* Complaint at ¶26).  Knowledge can be inferred where the risk is obvious.  *Farmer*, 511 U.S. at 843.  However, "it is not enough that that the official 'should have known' of  a substantial risk or that a reasonable officer in the situation would have known of the risk."  *Haley v. Gross*, 86 F.3d  630, 641 (7th Cir. 1996).  Further, the *Farmer* Court found that it does not amount to deliberate indifference if an official fails to alleviate a significant threat that he should have identified but failed to find.  *Farmer*, 511 U.S. at 837-838.

      Defendants contend that there was no obvious risk to Plaintiff.  There was no identifiable significant threat presented by Plaintiff in his communications to prison officials.  Plaintiff's

letters, with their vague and amorphous allegations amounted to a complaint that he simply didn't like his cellmate.  There is no record that Plaintiff filed grievances concerning any threats or physical fights with Coffield.  With the exception of rubbing his arm against a correction officer's chest, Anthony Coffield had no history of violent behavior towards his cellmates or others in the prison until June 6, 2004.  In other words, there were no red flags concerning the placement of Plaintiff in a cell with Coffield.  As a practical matter, prison officials need more than what Plaintiff identifies in his letters in order to move prisoners to different cells.  If prison officials changed the cell of every inmate who complained of "arguing," "bickering," "problems," and "confrontations" with their cellmates, they would do little else but play musical cells.  In Plaintiff's letters, prison officials could not reasonably be expected to find or infer a substantial risk of serious harm to Plaintiff.  There are no genuine issues of material fact in dispute, and thus Plaintiff's claim must fail.

**II.    THE DEFENDANTS ARE IMMUNE IN THEIR OFFICIAL CAPACITIES.**

The Plaintiff's amended complaint (D.I. 10) names the Defendants in their official capacities.  The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."  While the Amendment does not facially bar suits against the State by its citizens, the United States Supreme Court has held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State."  *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III."  *Seminole Tribe of Florida v.*

*Florida*, 517 U.S. 44, 54 (1996). "The Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and, in the absence of congressional abrogation or consent, a suit against a state agency is proscribed*.*" *Neeley v. Samis*, 183 F. Supp. 2d 672, 678 (D. Del. 2002) (*quoting Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-100 (1984)). The United States Congress can abrogate a state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive the states' immunity will produce this result. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)*.* No such clear intent can be seen in 42 *U.S.C*. §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 *U.S.C*. §1983. Neither the State of Delaware, nor agencies or officials of the State of Delaware are "persons" as contemplated by 42 *U.S.C.* § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the Defendants in their official capacities are not "persons" for the purposes of 42 *U.S.C.* § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, given this categorization, this Court lacks jurisdiction over the Defendants in their official capacities, and Defendants are outside the class of persons subject to liability under 42 *U.S.C.* § 1983. Accordingly, the Defendants are entitled to summary judgment regarding any official capacity claims.

### III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity protects government officials from civil liability insofar as their conduct "does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity protects officials from the personal cost of litigation and the attendant inhibiting effect litigation has on the proper discharge of their official responsibilities. *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988).

The Supreme Court has announced unequivocally that the District Court, at the earliest possible stage of litigation, must consider the defense of qualified immunity under a legal standard separate and apart from its analysis of the underlying claim itself. These two analyses are not susceptible to fusion, and cannot be left for factual resolution by the trier of fact. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first question before the Court in a qualified immunity analysis is whether, taken in the light most favorable to the party asserting injury, the facts show that the prison officials' conduct violated a constitutional right. *Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004)(citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For the reasons set forth above, Plaintiff has failed to provide any evidentiary support to any of his alleged constitutional violations. In addition, Plaintiff's claims also suffer from several legal defects as set forth above. Plaintiff fails to make out a constitutional violation.

The next stage of the qualified immunity analysis requires the Court to ask whether the constitutional right allegedly violated was clearly established. *Saucier*, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable prison official that his conduct was unlawful in the situation he confronted." *Id* at 202. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Court must ask whether a reasonable public official would know his or her *specific conduct* violated clearly established rights. *Grant v. City of Pittsburgh*, 98 F.3d

116, 121 (3d Cir. 1996). "The 'salient question' is whether the state of the law at the time of the challenged conduct gave defendants 'fair warning' that their action was unconstitutional. *Black Hawk v. Pennsylvania*, 225 F.Supp.2d 465, 480 (M.D. Pa. 2002)(*quoting Hope v. Pelzer*, 536 U.S. 730,741 (2002)(articulating the "clearly established" inquiry to require that an official have 'fair warning' that the alleged activity engaged in was unconstitutional)).

Plaintiff's claims are based on heretofore unrecognized legal rights based on chimerical guarantee of protection. Nothing in the record supports a finding that any of the defendants ever engaged in any conduct which violated Plaintiff's rights. Additionally, Plaintiff's vague statements in his letters to prison officials fail to allege how any Defendant's *specific conduct* violated his clearly established rights. Assuming *arguendo* Plaintiff's ability to support any violation of any constitutional right, there is no legal authority which would provide the Defendants with "fair warning" that their alleged activities were unconstitutional. Accordingly, the Defendants are entitled to the defense of qualified immunity and summary judgment in their favor.

## CONCLUSION

For the foregoing reasons, Defendants Holman, McGuigan, and Sagers respectfully requests that this Honorable Court enter an order dismissing Plaintiff's claims against them with prejudice.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE


/s/ Lisa Barchi
Lisa Barchi  #3927
Deputy Attorney General
Carvel State Office Building

           820 N. French Street, 6th floor
           Wilmington, DE 19801
           (302) 577-8400
           lisa.barchi@state.de.us

           Attorney for Defendants

DATE: December 8, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2005, I electronically filed *Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss* with the Clerk of Court using CM/ECF. I hereby certify that on December 8 2005, I have mailed by United States Postal Service, the document to the following non-registered participant:

James Hall
SBI # 167581
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/ Lisa Barchi
Lisa Barchi # 3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
lisa.barchi@state.de.us