IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 04-1328-GMS |
| ) | |
| DAVID HOLMAN, Deputy Warden ) | |
| LAWRENCE McGUIGAN, and ) | |
| Acting Deputy Warden Clyde Sagers ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND ANSWER TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

COME NOW, Defendants Holman, McGuigan and Sagers and respond to Plaintiff's Answer to Defendants' Motion to Dismiss and Plaintiff's cross Motion for Summary Judgment as follows:

1. Plaintiff repeatedly admits in his cross Motion for Summary Judgment that there are no genuine issues of material fact in this case. Unless there is sufficient evidence to enable a jury reasonably to find for the nonmoving party on the factual issue, summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Supreme Court further stated that when evidence is "merely colorable…or is not significantly probabtive then summary judgment may be granted." *Id* at 249. When parties file cross motions for summary judgments, courts have held that no further evidence needs to be considered, other that what has been filed by the parties. *Barlow Family Limited Partnership v. Munson, Inc.*, 132 F. 3d 1316, 1319 (10th Cir. 1997). Plaintiff is asking the Court to decide the case on the evidence submitted.

As discovery is the mechanism used to collect facts, and Plaintiff repeatedly admits there are no issues of fact in dispute, Plaintiff is in essence telling the Court that he does not require further collection or development of the facts. Only legal issues remain to be decided by this Court.

2.   Turning to Plaintiff's Answer to Defendants' Motion to Dismiss, Plaintiff has failed to make any new arguments that support his claims that Defendants violated the Eighth Amendment. However, Defendants reply that some examination of Plaintiff's answers is required.

First, Plaintiff again claims the fracture of his "pinkie" finger was a serious injury. While this injury may cause pain and discomfort, it can by no means be considered a serious injury.

Second, Plaintiff claims repeatedly that he was in danger and that prison officials were on notice. However, despite his claims that he repeatedly told prison officials that he was in danger, he wrote only two letters to officials. Those letters used tepid words such as "bickering," "arguing," "problems" and "confrontations" to describe his conflict with Coffield. He does not mention any physical violence, or specific or even vague threats of physical violence from Coffield. The letters did not put prison officials on notice that Plaintiff was in any danger, as he claims.

The fact that Plaintiff failed to adequately communicate any risk he claimed he felt, does not make the prison officials liable for failing to divine the threat he claims he faced. Plaintiff has failed to demonstrate how prison officials could have had actual knowledge of any risk to him based on his two letters to them. Plaintiff also fails to show through any inference that officials knew of a substantial risk of harm, or that the risk was obvious. The U.S. Supreme Court has held that Plaintiff has the burden of showing that officials had actual knowledge which they disregarded, in order to prove they acted with deliberate indifference and thus violated the

Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). Plaintiff's failure to make anything but vague, amorphous complaints in his two letters does not create liability for Defendants. The Supreme Court did not hold that prison official should be able to read minds. Yet that is what Plaintiff claims should have occurred. The Court stated that officials are expected to take reasonable measures to protect inmates from violence, and that it is not enough that officials fail to alleviate a risk of which "should have known." *Farmer*, 511 U.S. at 837-843. In this case, Plaintiff unreasonably expected that officials should have known from his letters that "bickering" meant a serious risk of substantial harm.

3.   In Plaintiff's Answer, he introduces the Court and Defendants to new, previously unknown witnesses and their statements. It is curious that they are just entering the picture at this point in the pleadings. Plaintiff amended his Complaint twice; once on February 4, 2004, (D.I. 4), and again on September 9, 2005, (D.I. 10). Yet these statements first appear in the Answer to the Motion to Dismiss. They are not in any of the Complaints or his letters. If these inmates saw the events as they claimed, it is difficult to understand why Plaintiff did not mention them in his letters or include statements from them in any of the Complaints he filed. Plaintiff cannot excuse this failure to bring evidence forward earlier by claiming that he does not have legal training. He knew enough to include his letters and the responses in his Complaint, demonstrating that he is knowledgeable enough to provide some evidence to support his claims. The first statement, by inmate Charles Daley appears to be dated September 24, 2005, over fifteen months after the fight on June 6, 2004. The inmates claim that they were witness to the arguments and the fight, yet Plaintiff never mentions them in his letters to prison officials or in any of the three Complaints he filed. Conversely, the evidence presented by Defendants is documentation that was completed close in time to the events of June 6, 2004.

4.      As difficult as it is to accomplish, Defendants have provided evidence of a negative. Plaintiff claims in his Answer that Defendants misstated the facts regarding his claim of a lost tooth on March 9, 2004. In his original Complaint Plaintiff states "Plaintiff was attacked and suffered from the <u>loss of a tooth on 3-9-04</u>. [sic]" This statement is quite clear. In their Motion to Dismiss, Defendants were equally clear when they discussed following the trail of this claim, and found that there is no evidence of any fight, nor any dental trauma due to a fight occurring on or about March 9, 2004. Defendants included exhibits in their Motion to Dismiss that demonstrate the dearth of evidence of a fight or injury to Plaintiff in March, 2004. Most importantly, in his own letter to Lawrence McGuigan, Plaintiff writes nothing about a fight that caused him any injury. In addition, there is no medical or dental record showing treatment around that date for a tooth lost in a fight. Finally, there are no incident or disciplinary reports documenting a fight around that time. If this incident occurred as Plaintiff claims in his Complaint, there would be documentation of the incident and medical care. If this incident occurred as Plaintiff claims, it is curious that he *waited approximately three weeks* to write to Lawrence McGuigan, and then failed to say anything about an incident in which he lost a tooth. Incident reports are written when there is a physical altercation between inmates that is witnessed or reported to prison officials. Records are made of any treatment received for injuries. The fact that none of these indicators of a fight exist, is evidence that refutes Plaintiff's claim that an incident ever occurred on March 9, 2004

5.      In his Answer Plaintiff claims that Defendants are attempting to portray Anthony Coffield as a model inmate. Defendants made no such claims regarding Coffield. Defendants clearly described what the documentary evidence shows; that at the time Plaintiff was assigned to a cell with Coffield, he presented no obvious warning signs to officials regarding violent

behavior toward cellmates or other inmates. Plaintiff's recitation of Coffield's perceived faults does not change the fact that prior to Plaintiff and Coffield becoming cellmates, and during the time they were housed together, Coffield showed no indication that he had a track record of fighting with other inmates.

6.     There is no record that Plaintiff ever told anyone responsible for classification that he felt threatened, but the records do reveal that he caused another inmate to request Protective Custody. The inmate classification records, which cover the housing issues regarding inmates, were thoroughly reviewed for indications that Plaintiff complained about his cellmate. The classification records from January through June, 2004, contain no indication that Plaintiff ever mentioned a problem with his cellmate or gave any indication that he was being threatened with serious harm. (*See* Classification Designation page signed January 28, 2004, and attached as Exhibit "A"). However, the records did reveal that on July 21, 2004, another inmate requested Protective Custody because he said that he was threatened by James Hall. (*See* Incident Report attached as Exhibit "B"). What these records provide is further evidence that Plaintiff failed to tell the very group responsible for his housing that he felt threatened by his cellmate. In addition, the records show Plaintiff to be an aggressor who made another inmate feel threatened enough to ask for Protective Custody.

7.     Plaintiff's own claim in his Complaint and again in his Answer, that inmates should be housed based on their "compatibility" is further evidence that he faced no serious risk of harm, and belies the risk he claims to have felt between January and June, 2004. The words Plaintiff uses in his letters describe comparability, not a substantial risk of serious harm. In the context of Plaintiff's letters the words do not confer on officials actual knowledge of any risk to Plaintiff . When reviewing the words Plaintiff uses in his letters to describe his relationship with Coffield,

the words "bickering," "arguing," "problems," and "confrontations" are the type often associated with compatibility or the lack of compatibility. They are not the words that would put prison officials on notice of a substantial risk of serious harm. Based on Plaintiff's own writings in the winter and spring of 2004, regarding his relationship with Coffiled, prison officials could not have had actual knowledge of a risk. Without actual knowledge, they could not deliberately disregard the risk, and do not meet the standard for deliberate indifference under the Eighth Amendment.

     For all the reasons stated above and in Defendants' Motion to Dismiss/Summary Judgment, Defendants ask this Honorable Court to enter an order granting summary judgment in their favor, and denying Plaintiff's Motion for Summary Judgment.

STATE OF DELAWARE  
DEPARTMENT OF JUSTICE

/s/ Lisa Barchi  
Deputy Attorney General  
Department of Justice  
820 N. French Street, 6th floor  
Wilmington, DE 19801  
(302) 577-8400

Date: January 6, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JAMES HALL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   C.A. No.04-1328-GMS |
| | ) |
| DAVID HOLMAN, | ) |
| LAWRENCE MEGUIGAN, and | )   Jury Trial Demanded |
| CLYDE SAGERS | ) |
| | ) |
|     Defendants. | ) |

## **ORDER**

AND NOW, this _____ day of _____, 200___, the Motion to Dismiss/Summary Judgment filed by Defendants David Holman, Lawrence McGuigan and Clyde Sagers in the above-captioned matter having been duly considered, and any opposition thereto,

IT IS ORDERED that the Motion to Dismiss is granted and that judgment is hereby entered in favor of Defendants and against the Plaintiff.

 

_____
The Honorable Gregory M. Sleet, Judge
United States District Court

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 6, 2006 I electronically filed *State Defendants' Reply in Support of Their Motion To Dismiss and Answer to Plaintiff's cross motion for Summary Judgment* with the Clerk of Court using CM/ECF. I hereby certify that on January 6, 2006 I have mailed by United States Postal Service, the document to the following non-registered participants:

James Hall
SBI # 167581
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

                                                  /s/ Lisa Barchi
                                                  Deputy Attorney General
                                                  Department of Justice
                                                  820 N. French St., 6th Floor
                                                  Wilmington, DE 19801
                                                  (302) 577-8400
                                                  lisa.barchi@state.de.us